No. 21-11001

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ZACKEY RAHIMI,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, D. CT. NO. 4:21-CR-83 (HON. MARK T. PITTMAN)

## APPELLEE'S BRIEF FOR THE UNITED STATES OF AMERICA

CHAD E. MEACHAM
  United States Attorney
  Northern District of Texas

LEIGHA A. SIMONTON
  Assistant United States Attorney
  Northern District of Texas

KENNETH A. POLITE, JR.
  Assistant Attorney General

LISA H. MILLER
  Deputy Assistant Attorney General

DANIEL J. KANE
  Criminal Division, Appellate Section
  U.S. Department of Justice
  950 Pennsylvania Ave. NW
  Washington, DC 20530
  (202) 305-2402
  Daniel.J.Kane@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

The government does not request oral argument, as this case can be decided on the briefs and the record, and oral argument would not materially assist the Court.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF JURISDICTION .............................................................. 1

STATEMENT OF THE ISSUES .................................................................. 2

STATEMENT OF THE CASE ..................................................................... 2

    I.    Factual Background.................................................................. 2

    II.    Procedural History ................................................................. 4

        A.    The Indictment and Guilty Plea...................................... 4

        B.    The Presentence Investigation Report ............................. 5

        C.    Sentencing.................................................................. 9

    III.    Rulings Under Review ............................................................ 12

SUMMARY OF ARGUMENT ..................................................................... 12

ARGUMENT ......................................................................................... 13

    I.    The District Court Did Not Reversibly Err By Declining to Treat Certain Pending State Charges as Relevant Conduct.............................. 13

        A.    Standard of Review....................................................... 13

        B.    Discussion.................................................................. 13

            1. The District Court Did Not Clearly Err ....................... 13

            2. Any Error Was Harmless....................................... 20

    II.    18 U.S.C. § 922(g)(8) Is Constitutional.................................... 23

CONCLUSION ........................................................................................................ 24

CERTIFICATE OF SERVICE ................................................................................ 25

CERTIFICATE OF COMPLIANCE .................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Mansfield* v. *Williamson Cnty.*,
  30 F.4th 276 (5th Cir. 2022) ........................................................ 23

*Setser* v. *United States*,
  566 U.S. 231 (2012) .................................................................... 21

*United States* v. *Barfield*,
  941 F.3d 757 (5th Cir. 2019) ...................................................... 13

*United States* v. *Brabson*,
  755 Fed. Appx. 412 (5th Cir. 2019) ........................................... 23

*United States* v. *Brown*,
  783 Fed. Appx. 330 (5th Cir. 2019) ........................................... 20

*United States* v. *Brummett*,
  355 F.3d 343 (5th Cir. 2003) .................................................18, 20

*United States* v. *Castro-Alfonso*,
  841 F.3d 292 (5th Cir. 2016) ...................................................... 22

*United States* v. *Culverhouse*,
  507 F.3d 888 (5th Cir. 2007) ...................................................... 16

*United States* v. *Davis*,
  967 F.3d 441 (5th Cir. 2020) .................................................18, 20

*United States* v. *Horton*,
  993 F.3d 370 (5th Cir.), cert. denied, 142 S. Ct. 382 (2021) ..................................... 13

*United States* v. *Jimenez*,
  509 F.3d 682 (5th Cir. 2007) ...................................................... 19

*United States* v. *Lindsey*,
  969 F.3d 136 (5th Cir. 2020), cert. denied, 141 S. Ct. 1433 (2021)........ 14, 15, 17, 21

*United States* v. *Maxwell*,
  34 F.3d 1006 (11th Cir. 1994) .................................................... 17

*United States* v. *McGinnis*,
   956 F.3d 747 (5th Cir. 2020), cert. denied, 141 S. Ct. 1397 (2021).....................13, 23

*United States* v. *Nava*,
   957 F.3d 581 (5th Cir.), cert. denied, 141 S. Ct. 831 (2020) ......................................13

*United States* v. *Ortiz*,
   613 F.3d 550 (5th Cir. 2010) ..............................................................................17, 18

*United States* v. *Rhine*,
   583 F.3d 878 (5th Cir. 2009) ..............................................................................17, 18

*United States* v. *Wall*,
   180 F.3d 641 (5th Cir. 1999) .....................................................................................17

*Williams* v. *United States*,
   503 U.S. 193 (1992) ....................................................................................................13

## Statutes, Rules, and Sentencing Guidelines

18 U.S.C. § 921 ...................................................................................................................3

18 U.S.C. § 922 ..........................................................................................................passim

18 U.S.C. § 924.............................................................................................................2, 4

18 U.S.C. § 3231 ..............................................................................................................1

18 U.S.C. § 3742 ..............................................................................................................1

28 U.S.C. § 1291 ..............................................................................................................1

Tex. Penal Code § 22.01 .............................................................................................16

Tex. Penal Code § 22.07 .............................................................................................16

Tex. Penal Code § 42.12 .............................................................................................16

Fed. R. App. P. 4 .............................................................................................................1

U.S.S.G. § 1B1.3 ....................................................................................................passim

U.S.S.G. § 3D1.2................................................................................................................14

U.S.S.G. § 5G1.3..............................................................................................8, 20

No. 21-11001

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ZACKEY RAHIMI,

Defendant-Appellant.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF TEXAS, D. CT. NO. 4:21-CR-83 (HON. MARK T. PITTMAN)

————————————

APPELLEE'S BRIEF FOR THE UNITED STATES OF AMERICA

————————————

## STATEMENT OF JURISDICTION

Zackey Rahimi appeals from his final judgment of conviction and sentence. The

district court had jurisdiction under 18 U.S.C. § 3231 and entered judgment on

September 27, 2021. ROA.95. Rahimi filed a timely notice of appeal. ROA.100; *see*

Fed. R. App. P. 4(b)(1)(A)(I). This Court has jurisdiction under 28 U.S.C. § 1291 and

18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1.  Whether the district court reversibly erred by ordering Rahimi's sentence to run consecutively to sentences that might be imposed in certain pending state criminal proceedings.

2.  Whether 18 U.S.C. § 922(g)(8) is unconstitutional on its face.

## STATEMENT OF THE CASE

Rahimi pleaded guilty to possessing firearms while under a domestic violence restraining order, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2).  ROA.95.  He was sentenced to 73 months of imprisonment, to be followed by three years of supervised release.  ROA.96.  This appeal followed.

## I.     Factual Background

Over a six-week stretch between December 2020 and January 2021, Rahimi participated in at least five shootings.  ROA.209-210.  On December 1, 2020, he fired an AR-15 rifle into the home of an individual to whom he had recently sold Percocet. ROA.209, 220.  On December 2, after colliding with another vehicle and causing it to roll into a wall, Rahimi exited his car, pulled out a handgun, fired at the driver, and drove off.  ROA.209.  He soon returned in a different car, fired a different gun at the disabled vehicle, and fled once again.  ROA.209-210.  On December 5, while traveling down a residential street with young children nearby, he reached out the passenger-side window of a moving vehicle and fired several bullets into the air.  ROA.210.  On December 22, he sped past two other vehicles on a highway; after one of them flashed

2

its headlights, Rahimi slammed on the breaks, swerved to follow, and came upon the other vehicle, at which he fired several rounds. ROA.210. And finally, on January 7, he fired several bullets into the air after an associate's credit card was declined at a fast-food restaurant. ROA.210.

After Rahimi was identified as a suspect in these shootings, police officers in Arlington, Texas, obtained a warrant to search his residence. ROA.210. They executed the warrant on January 14, 2021, while Rahimi was in state custody in connection with another firearm offense. ROA.210. Inside Rahimi's room, officers found a .45-caliber pistol with a large-capacity magazine, a .308-caliber rifle with a large-capacity magazine, ammunition, and approximately $20,000. ROA.68, 211. Elsewhere in the house, officers found another pistol that they later linked to Rahimi. ROA.211.

Officers also found, in Rahimi's room, a copy of a restraining order. ROA.211; *see* ROA.12-18. The order, which Rahimi had signed, was issued on February 5, 2020, and was effective until February 5, 2022. ROA.12, 15, 18, 211, 218. It recited a Tarrant County district court's findings that Rahimi and the individual who applied for the restraining order—referred to here as "C.M."—were the biological parents of a child and thus "intimate partners" under 18 U.S.C. § 921(a)(32); that Rahimi had "committed family violence"; and that Rahimi "represent[ed] a credible threat to the physical safety of [C.M.] or other members of the family." ROA.12-13; *see* ROA.68, 211. The order restrained Rahimi from "[c]ommitting family violence"; from approaching, threatening, or harassing C.M. or their child; and from possessing a firearm. ROA.13-14; *see*

3

ROA.211.   The order further warned Rahimi that possession of a firearm or ammunition while the order was in effect could be a felony under 18 U.S.C. §§ 922(g) and 924(a)(2).   ROA.16.

## II.     Procedural History

### A.     The Indictment and Guilty Plea

In April 2021, a federal grand jury in the Northern District of Texas returned an indictment alleging that on or about January 14, 2021, Rahimi possessed firearms while under a domestic violence restraining order, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2).   ROA.19-22.   Rahimi moved to dismiss the indictment on the ground that Section 922(g)(8) on its face violates the Second Amendment, but he acknowledged that the argument was foreclosed by circuit precedent.   ROA.41-59.   The district court denied the motion.   ROA.79-81.

On May 26, 2021, Rahimi pleaded guilty.   *See* ROA.66-71.   In connection with the plea, he stipulated that he knew of and was subject to the restraining order described above when he possessed the firearms listed in the indictment (*i.e.*, the firearms retrieved from his room) on January 14, 2021.   ROA.69.   He admitted that the restraining order prohibited the use, attempted use, or threatened use of physical force against an intimate partner, and that the order included a finding that he was a credible threat to the physical safety of an intimate partner.   ROA.68.   And he admitted that the order was issued after a hearing of which he received actual notice and at which he had an opportunity to participate.   ROA.68.

4

### B.    The Presentence Investigation Report

In advance of sentencing, the Probation Office prepared a presentence investigation report ("PSR") that, among other things, described Rahimi's lengthy criminal history. ROA.206-227. As relevant here, it described a series of state charges pending against him in Tarrant County Criminal Court for offenses that occurred between December 2019 and January 2021:

- <u>December 2019</u>: According to a police report, Rahimi grew angry with his then-girlfriend C.M. while they ate lunch in a parking lot. ROA.217. C.M. tried to leave, but Rahimi grabbed her wrist, causing her to fall. ROA.217. Rahimi then dragged C.M. back to his car and pushed her into the driver's seat, causing her to hit her forehead on the dashboard. ROA.217. After another individual seated in the car warned Rahimi that a witness had seen the assault, Rahimi instructed that person to grab a firearm from under the passenger seat. ROA.217. Rahimi took the gun and fired a shot. ROA.217. C.M. ran, and Rahimi later called her at work to tell her that if she told anyone about what happened, he would shoot her. ROA.217. C.M. thereafter told the police that she and Rahimi had a one-year-old son together and that she had sought an emergency protective order. ROA.217. Based on these events, Rahimi was charged with making a terroristic threat toward a family or household member, discharging a firearm, and assault causing bodily injury to a family member. ROA.217-218.

- <u>May 2020</u>:  According to a police report, Rahimi visited C.M.'s house to leave a note for her and a gift for their son.  ROA.218.  Because a restraining order prohibited Rahimi from approaching C.M.'s residence, he was charged with one count of violating a protective order.  ROA.218.

- <u>August 2020</u>:  According to a police report, Rahimi overdosed on narcotics.  ROA.219.  While medical personnel transported him to a hospital, officers learned that he was known to carry a firearm and subject to a warrant for violating a protective order.  ROA.219.  When Rahimi arrived at the hospital, the officers searched him and found five 30-milligram oxycodone pills.  ROA.219.  Rahimi was charged with possessing less than one gram of a controlled substance.  ROA.219.

- <u>November 2020</u>:  According to a criminal complaint, on November 12, 2020, Rahimi used or exhibited a firearm while threatening imminent bodily injury to a woman (not C.M.)  ROA.219.  Rahimi was charged with aggravated assault with a deadly weapon.  ROA.219.

- <u>December 1, 2020</u>:  As discussed above, Rahimi fired an AR-15 rifle into the home of a man to whom he had sold Percocet.  ROA.209, 220.  He was charged with deadly conduct involving the discharge of a firearm.  ROA.220.

- <u>December 2, 2020</u>:  As discussed above, Rahimi shot at the driver of a vehicle that he had caused to roll into a wall, and he later returned to shoot a different

gun at the disabled vehicle. ROA.209, 220. He was charged with aggravated assault with a deadly weapon. ROA.220.

- December 5, 2020: As discussed above, while traveling in a residential neighborhood, Rahimi fired several shots into the air from the passenger seat of a vehicle. ROA.210, 220. He was charged with unlawful discharge of a firearm. ROA.220.

- December 22, 2020: As discussed above, after Rahimi drove past a pair of vehicles and one flashed its headlights, Rahimi chased down the other vehicle and shot at it repeatedly. ROA.210, 220. He was charged with aggravated assault with a deadly weapon. ROA.220.

- January 7, 2021: As discussed above, Rahimi fired several bullets into the air after his associate's credit card was declined at a fast-food restaurant. ROA.210, 219. He was charged with unlawful discharge of a firearm. ROA.219.

The Probation Office treated the five most recent offenses—*i.e.*, the shootings in December 2020 and January 2021 that led to the search of Rahimi's residence, all committed while Rahimi was subject to a restraining order—as relevant conduct under U.S.S.G. § 1B1.3. *See* ROA.214, 223. Under that provision, application of certain guidelines provisions is "determined on the basis of . . . all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid

7

detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). In addition, with respect to a gun-possession offense like the one in this case, relevant conduct also includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

In his only written objection to the PSR, *see* ROA.229-232, Rahimi argued that the discharge of a firearm in December 2019 also should have been treated as relevant conduct because it was "part of the same course of conduct" as the charge in this case. ROA.229 (quoting U.S.S.G. § 1B1.3(a)(2)). In particular, he argued that the state charge was part of an "ongoing series" involving the possession of firearms that occurred within one year of other relevant conduct. ROA.230-232. And although he acknowledged that the district court retained discretion to order his federal sentence to run concurrently with or consecutively to any anticipated state sentences, he argued that if the December 2019 discharge were treated as relevant conduct, the Sentencing Guidelines would recommend that the sentence for the federal offense run concurrently with any sentence imposed for that state offense. ROA.231; *see* U.S.S.G. § 5G1.3(c) (providing that if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct" under Section 1B1.3(a)(1)-(3), "the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment").

The Probation Office declined to modify the PSR. ROA.237. It reasoned that the December 2019 offense was not relevant conduct for the offense of possessing

8

firearms while subject to a restraining order because Rahimi "was not prohibited from possessing [a] firearm" in December 2019.  ROA.237.

### C.    Sentencing

At the sentencing hearing, Rahimi expanded his objection, arguing that all of his December 2019 offenses should be treated as relevant conduct, and that his federal sentence should therefore run concurrently with any state sentences resulting from those offenses.  *See* ROA.176-177.  He further suggested that the aggravated assault he committed in November 2020 was also relevant conduct.  ROA.177-178.  The government expressed doubt that offenses Rahimi had committed before he was subject to a restraining order qualified as relevant conduct for an offense involving possession of a firearm while subject to a restraining order.  ROA.178-179.  But the government explained that because the guidelines were advisory, "the easiest way" to resolve the issue would be for the district court to assume that the guidelines recommended concurrent sentences and then decide, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), whether it would follow that recommendation or instead order Rahimi's federal sentence to run consecutively to the anticipated state sentences.  ROA.178-181.

The district court overruled Rahimi's objection, finding that the December 2019 offenses were not "part of the same conduct" as the federal charge because the restraining order did not yet exist.  ROA.181.  But the court also indicated that it would "take the easy way out" and consider whether to run the sentence in this case

concurrently with or consecutively to the anticipated state sentences as a matter of discretion.  ROA.181.

The district court adopted the PSR's factual findings and determined that Rahimi's advisory guidelines range was 46 to 57 months of imprisonment.  ROA.184-185.  The government sought an upward variance to 120 months of imprisonment, arguing that, as was apparent from videos of several of the shootings that the government submitted at sentencing, Rahimi posed a serious danger to the community.  ROA.186-188.[1]  In arguing for a within-guidelines sentence, defense counsel focused on Rahimi's age and the fact that he had not yet been convicted on the state charges.  ROA.189-192.

Before pronouncing sentence, the district court stated that it had reviewed the PSR, including the information about the state offenses, to "determine what's relevant conduct" and "whether [the state sentences] should be served concurrently or consecutively to the [federal] sentence."  ROA.196.  It further stated that it had considered the Section 3553(a) factors and the advisory guidelines.  ROA.197.

Finding that "the facts and circumstances of this case" warranted an upward variance, the district court sentenced Rahimi to 73 months in prison.  ROA.197-198.  The court ordered that sentence to run consecutively to any sentence Rahimi thereafter received in state court for the offenses committed in or before November 2020, but

---

[1]    The government is prepared to submit these videos upon the Court's request.

concurrently with any state sentence resulting from the shootings in December 2020 and January 2021 that led to the search of Rahimi's home and then the indictment in this case. *See* ROA.198-199.

This sentence, the district court explained, reflected Rahimi's serious criminal history, including "multiple shootings" and "assaultive conduct." ROA.200. Rahimi had "continuously possessed firearms while prohibited, and his use of firearms puts him at great risk to the community." ROA.200-201. Moreover, the court observed, Rahimi had "show[n] a disregard for human life by shooting at members of the public, shooting into the air, shooting into residences and buildings." ROA.201. And after noting that it had reduced Rahimi's sentence by five months to account for time he had spent in custody in connection with this case, ROA.198, 201, the district court stated that the sentence it had imposed was "sufficient, but not greater than necessary, to comply with the purposes set forth in [Section 3553(a)(2)]," in that it "reflects the seriousness of and provides a just punishment for the offense, promotes respect for the law and affords adequate deterrence to criminal conduct, [and] protect[s] the public from further crimes of [Rahimi]." ROA.201-202.

Finally, the court explained that "[e]ven if my guideline calculations here today are later shown to be incorrect based on the facts and circumstances of this case that I have considered, this is the same sentence that I would have imposed otherwise simply looking at the guidelines, simply looking at the factors set forth in [Section] 3553(a)." ROA.202. The district court later confirmed in its written statement of reasons: "Even

if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553." ROA.251.

## III.    Rulings Under Review

Rahimi appeals the district court's denial of his motion to dismiss the indictment and his sentence. ROA.100.

## SUMMARY OF ARGUMENT

1.    The district court did not clearly err by finding that Rahimi's December 2019 and November 2020 offenses were not relevant conduct under U.S.S.G. § 1B1.3. The December 2019 offenses were committed before Rahimi was subject to a restraining order, and both the December 2019 and November 2020 offenses involved actual or threatened violence against women, as distinct from the mere unlawful possession of a firearm charged in this case. On clear-error review, the record does not compel the conclusion that these offenses were so related to Rahimi's federal firearm-possession offense as to constitute a single episode, spree, or ongoing series of offenses. And in any event, even if the district court's findings were clearly erroneous, the error was harmless, as the district court was not required, under the advisory guidelines, to run Rahimi's federal sentence concurrently with any anticipated state sentence, and the district court expressly stated that it would have imposed the same sentence regardless of the guidelines' recommendation.

2.    Rahimi acknowledges that his constitutional challenge to 18 U.S.C. § 922(g)(8) is foreclosed by binding precedent. In *United States* v. *McGinnis*, 956 F.3d

747, 752-759 (5th Cir. 2020), cert. denied, 141 S. Ct. 1397 (2021), this Court held that 18 U.S.C. § 922(g)(8) is not a facially invalid restriction on an individual's right to bear arms under the Second Amendment. That holding controls the outcome here.

## ARGUMENT

## I. The District Court Did Not Reversibly Err By Declining to Treat Certain Pending State Charges as Relevant Conduct

### A. Standard of Review

"[A] district court's determination of what constitutes relevant conduct for purposes of sentencing is a factual finding that is reviewed for clear error." *United States* v. *Barfield*, 941 F.3d 757, 761 (5th Cir. 2019) (quotation marks omitted). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States* v. *Horton*, 993 F.3d 370, 375 (5th Cir.) (quotation marks omitted), cert. denied, 142 S. Ct. 382 (2021). Thus, this Court will not find clear error in a relevant-conduct determination even if "the district court could reasonably have come out the other way." *United States* v. *Nava*, 957 F.3d 581, 587 (5th Cir.), cert. denied, 141 S. Ct. 831 (2020). And in all events, remand is unnecessary if an error was harmless—*i.e.*, if it "did not affect the district court's selection of the sentence imposed." *Williams* v. *United States*, 503 U.S. 193, 203 (1992).

### B. Discussion

#### 1. The District Court Did Not Clearly Err

Rahimi contends (Br. 6-10) that his December 2019 and November 2020 offenses were so related to his possession of firearms as a prohibited person in January

2021 that they constituted relevant conduct under U.S.S.G. § 1B1.3. The district court did not clearly err in rejecting that argument.

Section 1B1.3 governs relevant-conduct determinations. It provides that "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" constitute relevant conduct. U.S.S.G. § 1B1.3(a)(1)(A). Section 1B1.3 further provides that, with respect to offenses involving behavior that is ongoing or continuous in nature, including gun-possession offenses like the one charged in this case, relevant conduct also includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see* U.S.S.G. § 3D1.2(d).

The commentary to Section 1B1.3 states that offenses may qualify as part of the same course of conduct if they are "sufficiently connected or related to [the offense of conviction] as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). "To determine whether offenses so qualify, courts consider 'the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" *United States* v. *Lindsey*, 969 F.3d 136, 141 (5th Cir. 2020) (per curiam) (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)), cert. denied, 141 S. Ct. 1433 (2021). "When one of [those] factors is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).

14

The district court reasonably determined that Rahimi's three December 2019 offenses—making a terroristic threat toward a family member, discharging a firearm, and assault causing bodily injury to a family member—and his one November 2020 offense—aggravated assault with a deadly weapon—were not part of the same course of conduct as his possession of firearms while subject to a restraining order.[2]

i.    *The December 2019 Offenses*

The factors identified in the commentary to Section 1B1.3—similarity, regularity, and temporal proximity—support the district court's finding that the December 2019 offenses were not part of the same course of conduct as the federal offense in this case. *See* U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).

To begin, as both the Probation Office and the district court observed, the key distinguishing element of the federal offense—the fact that Rahimi was subject to a restraining order when he possessed the firearms—was absent at the time of the December 2019 offenses.  *See* ROA.181 (district court stating "I don't see how this would be part of the same conduct if it occurred in December of 2019, and you don't have a protective order in place until February"); *see* ROA.237 (Probation Office stating

---

[2]    Rahimi does not argue that his prior offenses were part of the same "scheme or plan" as the offense in this case.  This Court therefore need not consider that argument. *Lindsey*, 969 F.3d at 141.  In any event, the argument would fail for much the same reasons that, as described below, the prior state offenses were not part of the same "course of conduct" as the offense in this case.  *See ibid.* (noting that "course of conduct" and "common scheme or plan" are "closely related" concepts) (quotation marks omitted).

"the offense in paragraph 51 was not relevant conduct as [Rahimi] was not prohibited from possessing the firearm on December 9, 2019"). Rahimi cites no authority suggesting that a prior possession of a firearm while the defendant was not a prohibited person must be treated as relevant conduct in a later prosecution for unlawful possession of a firearm by a prohibited person.

Moreover, the state offenses with which Rahimi was charged are themselves dissimilar to the federal firearm-possession offense in this case, as the state offenses extended beyond mere unlawful firearm possession and required proof of the use of a weapon, violence, or a threat of violence. *Compare* 18 U.S.C. § 922(g)(8) (prohibiting possession of a firearm while subject to a domestic violence restraining order), *with* Tex. Penal Code § 22.07(c)(1) (prohibiting threatening a family member with violence with the intent to place any person in fear of imminent serious bodily injury), *id.* § 42.12 (prohibiting the reckless discharge of a firearm in certain municipalities), *and id.* § 22.01(a)(1) (prohibiting intentionally, knowingly, or recklessly causing bodily injury to another). And the differing charges reflected differing conduct. The state and federal offenses did not, for example, share "a similar *modus operandi*," *United States* v. *Culverhouse*, 507 F.3d 888, 896 (5th Cir. 2007): The December 2019 offenses involved violence against an intimate partner, *see* ROA.217, and the federal offense did not involve violence at all, but only the possession of firearms, *see* ROA.19-20, 68-69. Nor did the

offenses share "common accomplices," *Lindsey*, 969 F.3d at 142, as the December 2019 offenses involved an accomplice, and the federal offense did not, *see* ROA.68-69, 217.[3]

To be sure, as Rahimi observes (Br. 9), the offenses all involved firearms. But this Court has cautioned district courts not to "conduct [the similarity] analysis at such a level of generality as to render it meaningless," as "almost any [prior] criminal activity can be painted as similar in at least one respect to the charged criminal conduct." *United States* v. *Rhine*, 583 F.3d 878, 888-889 (5th Cir. 2009) (quotation marks omitted). Thus, for example, offenses do not "constitute a single course of conduct simply because they both involve drug distribution." *United States* v. *Wall*, 180 F.3d 641, 646-647 (5th Cir. 1999) (quoting *United States* v. *Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994)); *accord, e.g.*, *Lindsey*, 969 F.3d at 142; *United States* v. *Ortiz*, 613 F.3d 550, 558 (5th Cir. 2010); *Rhine*, 583 F.3d at 888-889. And here, as explained, the district court plausibly determined, based on the particular circumstances of this case, that the federal offense was materially dissimilar from the December 2019 offenses. *See, e.g.*, *United States* v. *Davis*, 967 F.3d

---

[3]  To the extent Rahimi suggests (Br. 9) that the federal offense to which he pleaded guilty necessarily encompassed the December 2020 and January 2021 shootings, that assertion is belied by the indictment, which charged only the possession of firearms on or about January 14, 2021 (the date on which the firearms were seized from his residence), *see* ROA.19-20, and his admissions in connection with the guilty plea, which similarly addressed only January 14, 2021, *see* ROA.68-69, 144-145, 164-165. In any event, the December 2020 and January 2021 shootings did not involve violence against an intimate partner, let alone C.M. herself, and Rahimi's only accomplice was an individual named Rahim Wafayee, *see* ROA.209-210, who did not participate in the December 2019 offenses, *see* ROA.217.

441, 442 (5th Cir. 2020) (per curiam) (holding in connection with a federal felon-in-possession prosecution that similarity was "arguably absent" where the "types of guns," "methods of operation," and accomplices involved in prior state offenses were different from those involved in the federal offense).

Rahimi also has not shown a "regular, *i.e.*, repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction." *Rhine*, 583 F.3d at 889-890. To the extent that the offenses here reveal a pattern, it is that Rahimi used firearms to commit crimes. But he has not established a clear pattern of "*similar* unlawful conduct," *id.* at 890 (emphasis added), because, again, the December 2019 offenses are materially dissimilar from the federal offense of conviction. *See Ortiz*, 613 F.3d at 558 (holding that a pattern of similar marijuana offenses established regularity only as to marijuana trafficking, not as to trafficking offenses involving other drugs); *cf. United States* v. *Brummett*, 355 F.3d 343, 344-345 (5th Cir. 2003) (per curiam) (treating as "regular" a defendant's possession of firearms on three occasions within nine months, but only where the defendant had possessed each of the firearms "after a felony conviction" and each of the offenses involved drug paraphernalia). And temporal proximity is likewise lacking: As Rahimi recognizes (Br. 8), the offense in this case occurred more than a year after the December 2019 offenses. *See Rhine*, 583 F.3d at 886-887 (noting that this Court has "generally used a year as the benchmark for determining temporal proximity" and holding that a gap of 17 months "suggests that temporal proximity is lacking") (quotation marks omitted); *cf. Davis*, 967 F.3d at 442

(noting that a ten-month interval between offenses was "not strong" evidence of temporal proximity). Rahimi therefore has failed to demonstrate clear error.

ii.    *The November 2020 Offense*

Rahimi also has not met his burden to show that the district court clearly erred in finding that the November 2020 offense was not relevant conduct. *See United States* v. *Jimenez*, 509 F.3d 682, 694 (5th Cir. 2007). The district court had limited information about that offense, as the Probation Office had not received a police report by the time it produced the PSR. ROA.219. But the information available to the district court— that Rahimi had used or exhibited a firearm while threatening bodily injury to a woman who was not C.M.—permitted the court to conclude that the November 2020 offense was not relevant conduct because it was significantly dissimilar to the offense conduct in this case. *See* ROA.219. Like the December 2019 offenses, the November 2020 offense involved a distinct *modus operandi* that included threatened violence against a woman, and there is no evidence that it involved, for example, either an accomplice or one of the firearms that was involved in the federal offense. *See* ROA.68-69, 219. And although Rahimi appears to argue (Br. 9) that the December 2019 and November 2020 offenses themselves established a pattern of "firearms and domestic-violence conduct," such a pattern would not suffice to link those offenses to his federal offense, which did not involve any violence or threatened violence, much less domestic violence.

To be sure, Rahimi was prohibited from possessing a firearm in November 2020, and a prior unlawful possession of a firearm may often qualify as relevant conduct in a

19

federal firearm-possession prosecution. *See Brummett*, 355 F.3d at 345; *see also*, *e.g.*, *United States* v. *Brown*, 783 Fed. Appx. 330, 331-333 & n.3 (5th Cir. 2019) (per curiam) (unpublished). But the record here did not compel that conclusion, as this Court's recent decision in *Davis* illustrates. There, the district court had ordered a federal sentence for unlawful possession of a firearm to run consecutively to an anticipated state-court sentence for a prior unlawful firearm possession. 967 F.3d at 442. The defendant appealed, arguing that the prior offense (committed roughly ten months before the federal offense) was relevant conduct and that Section 5G1.3(c) therefore recommended concurrent sentences. *Ibid.* This Court found "no clear or obvious error under § 5G1.3(c)," explaining that the "types of guns[] and the methods of operation were different, and there was no evidence that there were common accomplices." *Ibid.* (citing U.S.S.G. § 1B1.3(a)(2) cmt. n.5(B)(ii)). Likewise here, where "[t]wo of the relevant considerations—similarity and regularity—are arguably absent," *ibid.*, Rahimi has not established clear error.

### 2.  Any Error Was Harmless

In any event, even if the district court clearly erred, the error was harmless. Rahimi argues (Br. 9-10) that if the December 2019 and November 2020 offenses were relevant conduct, Section 5G1.3(c) would have recommended that his federal sentence run concurrently with any state sentences arising from those offenses. But "[j]udges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences." *Setser*

v. *United States*, 566 U.S. 231, 236 (2012).  Accordingly—and as Rahimi acknowledges (Br. 6-7, 9-10)—district courts retain "discretion to select whether sentences they impose will run concurrently or consecutively to anticipated state sentences that have not yet been imposed." *Lindsey*, 969 F.3d at 143.

The district court plainly understood its authority to run the sentence in this case concurrently with or consecutively to the anticipated state sentences.  The PSR specifically noted that discretion, ROA.223-224; the government emphasized it at sentencing, ROA.179-181; and the district court indicated that it would consider how to structure Rahimi's sentence when it decided whether to vary from the advisory guidelines range, ROA.181.  And it did just that:  After hearing argument on whether to vary, the court conducted an off-the-record discussion with a probation officer to decide "how to properly handle" the "several state cases." ROA.196.  When it returned, the court stated, "at this time I am satisfied with regard to how the Court should consider the state sentences and whether they should be served concurrently or consecutively to the sentence that the Court will be imposing." ROA.196.  The court then conducted a thorough analysis of the Section 3553(a) factors and pronounced its sentence.  ROA.197-202.

That sentence—which reflected an upward variance and accounted for time Rahimi had spent in custody in connection with this case—was a product of discretion, rather than a mechanical application of the guidelines.  *See* ROA.197-198; *see also* ROA.200-201 (district court explaining that the sentence reflected Rahimi's "history of

criminal behavior," "disregard for human life," and "danger to the community"). Accordingly, the district court stated both at sentencing and in its written statement of reasons that it would have imposed the same sentence even if it had misapplied the guidelines. *See* ROA.202 ("Even if my guideline calculations here today are later shown to be incorrect based on the facts and circumstances of this case that I have considered, this is the same sentence that I would have imposed otherwise simply looking at the guidelines, simply looking at the factors set forth in 3553(a)."); ROA.251 ("Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553."). And because Rahimi's only challenge to the district court's guidelines analysis concerned the effect of Sections 1B1.3 and 5G1.3(c), *see* ROA.177, 229-232, 237, those statements confirmed that the structure of Rahimi's sentence did not depend on whether his state offenses were classified as relevant conduct.[4]

    In sum, the district court considered the Section 3553(a) factors and "stated plainly that [it] would have imposed the same sentence regardless of whether [it] was in error." *United States* v. *Castro-Alfonso*, 841 F.3d 292, 298-299 (5th Cir. 2016). That is a sufficient basis for affirmance. *See ibid.*; *see also, e.g.*, *United States* v. *Brabson*, 755 Fed.

---

[4]    Rahimi had also objected to the discussion of his criminal history in the PSR, arguing that it relied only on police reports. ROA.181-183. That objection—which the district court overruled, *see* ROA.184, and which Rahimi does not renew on appeal—did not directly challenge the district court's application of the guidelines.

Appx. 412, 412-413 (5th Cir. 2019) (per curiam) (unpublished) (holding that any error in applying Section 5G1.3(b) "would be harmless given that the record establishes that the court would have imposed the same consecutive sentence regardless of the effect of that Guideline").

## II.    18 U.S.C. § 922(g)(8) Is Constitutional

Rahimi further contends (Br. 10-33) that 18 U.S.C. § 922(g)(8) is a facially unconstitutional restriction on an individual's Second Amendment right to bear arms. This Court recently rejected that argument, holding that Section 922(g)(8) "is not facially unconstitutional." *United States* v. *McGinnis*, 956 F.3d 747, 753 (5th Cir. 2020), cert. denied, 141 S. Ct. 1397 (2021); *see id.* at 753-759. Thus, as Rahimi acknowledges (Br. 10), his argument is foreclosed by precedent. *See Mansfield* v. *Williamson Cnty.*, 30 F.4th 276, 280-281 (5th Cir. 2022) ("[T]hree-judge panels in the Fifth Circuit abide by controlling precedent not overruled by the Supreme Court or an en banc sitting of this Court.").

# CONCLUSION

Rahimi's conviction and sentence should be affirmed.

Respectfully submitted,

CHAD E. MEACHAM
    United States Attorney
    Northern District of Texas

KENNETH A. POLITE, JR.
    Assistant Attorney General

LISA H. MILLER
    Deputy Assistant Attorney General

LEIGHA A. SIMONTON
    Assistant United States Attorney
    Northern District of Texas

s/ Daniel J. Kane
    Criminal Division, Appellate Section
    U.S. Department of Justice
    950 Pennsylvania Ave. NW
    Washington, DC 20530
    (202) 305-2402
    Daniel.J.Kane@usdoj.gov

May 2, 2022

## CERTIFICATE OF SERVICE

I certify that on May 2, 2022, I caused the foregoing brief to be served upon all Filing Users through the Court's Case Management/Electronic Case Files ("CM/ECF") system.

s/ Daniel J. Kane
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 305-2402
Daniel.J.Kane@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,597 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Garamond font.

<u>s/ Daniel J. Kane</u>
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 305-2402
Daniel.J.Kane@usdoj.gov