# FEDERAL PUBLIC DEFENDER

## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JASON D. HAWKINS<br>FEDERAL PUBLIC DEFENDER | 500 SOUTH TAYLOR STREET<br>SUITE 110<br>AMARILLO, TEXAS 79101 | J. MATTHEW WRIGHT<br>ASSISTANT FEDERAL PUBLIC DEFENDER<br>matthew_wright@fd.org |

PHONE 806-324-2370

**Via ECF**

September 2, 2022

Lyle W. Cayce
Clerk of the Court
U.S. Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, Louisiana 70130

Re: *United States v. Rahimi*, No. 21-11001: Response to Government 28(j) Letter Regarding 18th Century Laws

Dear Mr. Cayce:

None of the newly cited old authorities is "relevantly similar" to 18 U.S.C. § 922(g)(8). *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2132 (2022). These laws prohibited *misuse* of firearms, and three allowed confiscation of misused weapons as a punishment. *See* 1786 Va. Acts ch. 21 in [Va. Acts 30 (1803 ed.)](); [N.H. Acts 1–2 (Fowle 1761)](); and 1692 Mass. Acts. ch. 18, § 6, in [1 Mass. Acts 52–53 (Wright & Potter 1869)]().

None of the early American laws banned a citizen from possessing firearms at home. Exactly the opposite—from 1607–1815, American legislatures *refused* to regulate the possession or ownership of firearms by "the body politic," including even "dangerous" citizens. Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 161–64 (2007). In this, American laws diverged from "English law," which did allow authorities to preemptively disarm allegedly dangerous people. *Id.* at 164.

Rather than preemptive disarmament, American tradition reflects "robust use of the colonial and early national states' police power to regulate the *use* of guns." *Id.* (emphasis added). All laws the Government cites typify that pattern—they punish the *misuse* of weapons "to promote public safety and to protect private property." *Id.* at 164. Even when misused guns were confiscated and sold as

punishment, nothing prevented an unimprisoned malefactor from possessing another firearm at home. Thus, these historical laws differ from § 922(g)(8) on *Bruen*'s "how" and "why" metrics. 142 S. Ct. at 2133.

These early laws supply a better answer for Judge Wilson's question about the Second Amendment protecting the right of "law-abiding citizens" to keep and bear arms. "Law-abiding" cannot be a description of a *person* because American history and tradition allow even dishonorable, law-breaking, and immoral citizens to retain to their personal weapons. "Law-abiding" might instead describe the *conduct* that is protected by the Second Amendment: governments may prohibit and severely punish the *unlawful misuse* of a firearm.

                         Respectfully submitted,

                         <u>/s/ J. Matthew Wright</u>
                         Assistant Federal Public Defender


cc (via ECF):     William A. Glaser


### Certificate of Compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 28(j) because the body of the letter contains 346 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using MS Word, Goudy Old Style, 12-point font.

3. This document has been scanned with the latest version of a Commercial Antivirus Software.

                         <u>/s/ J. Matthew Wright</u>