IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

## CASE NUMBER 21-11001

UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE,*

V.

ZACKEY RAHIMI,
*DEFENDANT-APPELLANT.*

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

## PETITION FOR PANEL REHEARING

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

J. MATTHEW WRIGHT
ASSISTANT FEDERAL PUBLIC DEFENDER
500 South Taylor Street
Suite 110
Amarillo, Texas 79101
(806) 324-2370
Matthew_Wright@fd.org

*Counsel for Mr. Rahimi*

# Table of Contents

Table of Contents ........................................................................................... ii

Petition for Panel Rehearing .................................................................... 1

Reasons to Grant Rehearing ...................................................................... 1

I. The district court concluded that Mr. Rahimi engaged in a continuous pattern of violence involving unlawful possession of firearms beginning in November 2020. Most of those offenses were relevant conduct, but for unknown reasons the court decided that the first was not. ............................................................................................................. 1

    A. At sentencing, the district court found that Mr. Rahimi committed all the alleged acts of misconduct and determined that several violent acts were part of the same course of conduct or common scheme involving unlawful possession of firearms ........................................... 3

    B. The district court excluded the pre-protective-order conduct because Mr. Rahimi was not yet prohibited from possessing firearms. ........................ 4

    C. Mr. Rahimi also argued that the events of November 12, 2020, were relevant conduct. The district court inexplicably held otherwise. ................. 5

II. When affirming the consecutive order for the November 2020 case, this Court appears to have overlooked the existence of the December 2020 and January 2021 prosecutions as well as the district court's undisputed conclusion that they are relevant conduct. ..................................... 6

    A. The most recent opinion does not mention or discuss the other pending Texas cases at all. ............................................................................ 6

    B. The June 2022 withdrawn opinion analyzed the November 12, 2020 offense in isolation, without addressing the tension or inconsistency between this Court's analysis and the district court's rulings about December 2020 and January 2021 .............................................................. 8

III. The district court's ruling that the November 2020 case is unrelated cannot be squared with its undisputed findings about the December 2020 offenses. .................................................................................... 9

Conclusion............................................................................................................ 10

Certificate of Service ........................................................................................... 11

Certificate of Compliance ................................................................................... 11

## Table of Authorities

**Cases**

*United States v. Rahimi*,
144 S. Ct. 1889 (2024) ............................................................................ 1, 10

*United States v. Rahimi*,
61 F.4th 443 (5th Cir. 2023) ......................................................................... 1

*United States v. Rahimi*,
No. 21-11001, 2022 WL 2070392 (5th Cir. June 8, 2022),
*withdrawn*, 2022 WL 2552046 (5th Cir. July 7, 2022) .................................. 8

**Statutes**

18 U.S.C. 922(g)(8) .................................................................................... 2

**Guidelines**

U.S.S.G. § 1B1.3(a)(1)(A) ............................................................................ 3

U.S.S.G. § 1B1.3(a)(2) ................................................................................. 3

U.S.S.G. § 1B1.3(c) ..................................................................................... 6

U.S.S.G. § 1B1.3, cmt., n.1(I) ...................................................................... 3

U.S.S.G. § 2K2.1, cmt., n.14 ....................................................................... 3

U.S.S.G. § 2K2.1, cmt., n.14(E)(ii) ............................................................ 4, 7

**Petition for Panel Rehearing**

Appellant Zackey Rahimi requests panel rehearing as to one narrow claim: that the district court erred when it determined that his unlawful possession of firearms (and associated misconduct) on November 12, 2020, was not "relevant conduct" for purposes of sentencing in this case. This Court rejected that claim, App. 3a–4a, but appears to have overlooked the district court's undisputed conclusion that *similar* violent acts—on December 1, 2, 5, and 20, 2020, and January 7, 2021—*were* relevant conduct.

**Reasons to Grant Rehearing**

**I.  The district court concluded that Mr. Rahimi engaged in a continuous pattern of violence involving unlawful possession of firearms beginning in November 2020. Most of those offenses were relevant conduct, but for unknown reasons the court decided that the first was not.**

The indictment alleged, and Mr. Rahimi's guilty plea admitted, that on January 14, 2021, while he was subject to a two-year agreed protective order issued on February 5, 2020, he possessed a .308-caliber rifle and a .45-caliber pistol in his bedroom. ROA.20, 68.

At sentencing, the district court found that Mr. Rahimi had engaged in a variety of additional criminal activities beginning in December 2019. *See United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir. 2023); *see also United States v. Rahimi*, 144 S. Ct.

1

1889, 1894–95 (2024). These same allegations led to a host of charges in Texas courts. This table summarizes the chronology and the relationship of the various charges and events at issue:

| Case Number | Date of (Alleged) Event | PSR Paragraph | Offense/Event | Relevance Ruling |
|---|---|---|---|---|
| 1635415 | Dec. 9, 2019 | 50 | Terroristic Threat | Nonrelevant; Consecutive |
| 1635418 | Dec. 9, 2019 | 50, 51 | Reckless Discharge of Firearm in Municipality | Nonrelevant; Consecutive |
| 1635420 | Dec. 9, 2019 | 50, 52 | Assault—Family Violence | Nonrelevant; Consecutive |
| 324-675717-20 | Feb. 5, 2020 | 19 | *Agreed Protective Order* | – |
| 1654868 | May 10, 2020 | 53 | Violation of Protective Order | Nonrelevant; Consecutive |
| 1657182D | Aug. 30, 2020 | 54 | Possession of <1gm Controlled Substance | Nonrelevant; Consecutive |
| 1678799D | Nov. 12, 2020 | 55 | Aggravated Assault with Deadly Weapon | Nonrelevant; Consecutive |
| 1672223D | Dec. 1, 2020 | 8, 9, 57 | Deadly Conduct | Relevant; Concurrent |
| 1671143 | Dec. 2, 2020 | 10, 60 | Aggravated Assault with Deadly Weapon | Relevant; Concurrent |
| 1671482 | Dec. 5, 2020 | 12, 58 | Reckless Discharge of Firearm in Municipality | Relevant; Concurrent |
| 1676245D | Dec. 20, 2020 | 13, 59 | Aggravated Assault with Deadly Weapon | Relevant; Concurrent |
| 1672225 | Jan. 7, 2020 | 14, 56 | Reckless Discharge of Firearm in Municipality | Relevant; Concurrent |
| 4:21-cr-83 | Jan. 14, 2020 | 16, 17 | *Possession of Firearm 18 U.S.C. 922(g)(8)* | – |

**A. At sentencing, the district court found that Mr. Rahimi committed all the alleged acts of misconduct and determined that several violent acts were part of the same course of conduct or common scheme involving unlawful possession of firearms.**

When applying the federal Sentencing Guidelines, a district court is not limited to the facts proven beyond a reasonable doubt or admitted in a plea. The Guidelines take into account the offense of conviction "and all relevant conduct." U.S.S.G. § 1B1.3, cmt., n.1(I). For unlawful possession of a firearm, "relevant conduct" includes everything the defendant did *while* unlawfully possessing the firearms named in the indictment as well as any other misconduct "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A), (a)(2); *see also* § 2K2.1, cmt., n.14.

Here, the district court determined that Mr. Rahimi committed multiple violent offenses while illegally possessing firearms on November 12, December 1, 2, 5, and 20, 2020, and January 7, 2021, and that each of those offenses (other than the first) was "relevant conduct" to the federal possession offense on January 14, 2021. That "relevant conduct" determination raised Mr. Rahimi's Sentencing Guideline calculation. It led to a four-offense-level enhancement for possessing firearms "in connection with" felony offenses of deadly conduct and aggravated assault. ROA.213 ¶ 31.

Because those previous crimes involved different guns,[1] the district court necessarily found that the earlier incidents were "part of the same course of conduct or common scheme or plan" as the January 14, 2021 possession offense. *See* U.S.S.G. § 2K2.1, cmt., n.14(E)(ii). Mr. Rahimi unsuccessfully objected to the reliability of the evidence of the unadjudicated allegations. ROA.183. He did not dispute that December 2020 and January 2021 allegations, *if true*, were relevant conduct. Neither did the Government. The PSR described a *series* or *spree* of offenses involving illegally possessed guns. ROA.213 ¶ 30 (discussing December 1, 2, 5, and 22, 2020, and January 7, 14, 2021).

**B. The district court excluded the pre-protective-order conduct because Mr. Rahimi was not yet prohibited from possessing firearms.**

Mr. Rahimi argued that the district court should *also* include the December 9, 2019, allegations as relevant conduct. ROA.229-232. The district court disagreed. In December 2019, Mr. Rahimi was not yet "prohibited from possessing firearms"—those events *preceded* the issuance of the protective order in February 2020. ROA.237; *see also* ROA.181 ("I don't see how that this would be part of the same conduct if it

---

[1] The indictment and factual resume identified two firearms found in Mr. Rahimi's room during the January 14, 2021 search: a .308-caliber rifle and .45-caliber pistol. ROA.20, 68. The December 2020 allegations involved firearms in completely different calibers: .223, .40, and 9-millimeter. ROA.213 ¶ 30.

occurred in December of 2019, and you don't have a protective order in place until February.").

Mr. Rahimi challenged this ruling on appeal, and the Court affirmed. Without abandoning this argument, he acknowledges that the events of December 2019 were distinct from the others in at least two ways: he was not yet a prohibited person, and the November–January "spree" began eleven months later. Without additional detail about what firearm was used, this presents a closer question.

### C. Mr. Rahimi also argued that the events of November 12, 2020, were relevant conduct. The district court inexplicably held otherwise.

Mr. Rahimi also argued that the November 12, 2020, offense belonged in the "relevant conduct" bucket because he *was* prohibited from possessing firearms that day. ROA.178. And the November 12 incident was just 19 days before the December 1 incident. Everyone agrees that the "deadly conduct" offense on December 1, 2020, is relevant conduct, just like all the subsequent offenses.

The district court never explained why November 12, 2020, should be treated any differently than December 1, 2, 5, and 22, 2020. The court may have misunderstood the sequence—at one point, the court described this as a question about a "November 2019 offense" rather than November 2020. ROA.178. The court did not otherwise explain why it concluded that the events of November 12, 2020 were different from those in December 2020 and January 2021.

Following U.S.S.G. § 1B1.3(c), the district court ordered the federal sentence to run concurrently with *every* offense it deemed relevant conduct. *See* ROA.196, 198, 199. For the offenses that were *not* classified as relevant conduct, the court ordered consecutive service. Case 1678799D—the November 12, 2020 aggravated assault—fell on the consecutive list. ROA.198; *see also* ROA.96.

## II. When affirming the consecutive order for the November 2020 case, this Court appears to have overlooked the existence of the December 2020 and January 2021 prosecutions as well as the district court's undisputed conclusion that they are relevant conduct.

### A. The most recent opinion does not mention or discuss the other pending Texas cases at all.

In his opening brief, Mr. Rahimi urged the Court to hold that *four* of the consecutive charges should have been concurrent. Three were "related to" the December 2019 assault and the fourth was "from Rahimi's aggravated assault of a different woman in November 2020." App. 3a n.2.

This Court's most recent opinion seems to suggest that these were the *only* charges pending in Texas court. Footnote 2 reads, "At the time Rahimi filed this appeal, *he faced four state charges stemming from his use of a firearm*." App. 3a (emphasis added). And the opinion twice characterizes the judgment below as ordering Mr. Rahimi's federal sentence "to run consecutively with *any* state sentences imposed." App. 2a (emphasis added); *see also* App. 3a (The district court "ordered Rahimi's 73-

month federal sentence to run consecutively to any sentences stemming from his pending state charges.").

In fact, Mr. Rahimi faced *eleven* pending Texas charges, including at least *seven* involving misuse of firearms. ROA.217-220. Those charges are summarized in the table above. Of the state charges involving illegally possessed firearms, the district court ruled that five were relevant to the federal offense. ROA.213, 223. Those acts of violence took place over several days—December 1, 2, 5, and 20 of 2020, and January 7, 2021—and involved *different* illegally possessed firearms—i.e., firearms other than the .308 rifle and .45 pistol giving rise to the federal indictment. ROA.213 ¶ 30. None of those events involved simple possession in the home, which was the only conduct committed on January 14, 2021.

Yet the district court correctly ruled that *all* the December 2020 crimes were relevant conduct to the January 2021 offense. Application Note 14(E) of Guideline 2K2.1 explains why: each act of illegal firearm possession in late 2020 was "part of the same course of conduct or common scheme or plan" as the January 14, 2021 offense. U.S.S.G. § 2K2.1, cmt., n.14(E)(ii). The district court simply failed to extend or apply this undisputed reasoning to the November 12, 2020 offense, perhaps because of oversight or mistake regarding the sequence.

**B. The June 2022 withdrawn opinion analyzed the November 12, 2020 offense in isolation, without addressing the tension or inconsistency between this Court's analysis and the district court's rulings about December 2020 and January 2021.**

In its most recent opinion, the Court favorably cited the withdrawn June 2022 opinion. App. 4a (discussing *United States v. Rahimi*, No. 21-11001, 2022 WL 2070392 (5th Cir. June 8, 2022), *withdrawn*, 2022 WL 2552046 (5th Cir. July 7, 2022)). The withdrawn opinion described the November 12, 2020 event in isolation, without addressing the other violent events in the same spree:

> Rahimi's violent use of the firearm in November is meaningfully different from merely possessing a firearm. Because the similarity and temporal-proximity factors are strained, the district court's finding that these previous acts are not relevant conduct is "plausible in light of the record as a whole," and accordingly is not clearly erroneous.

2022 WL 2070392, at *2 (citation and footnote omitted).

This excerpt glosses over the district court's undisputed conclusion that the acts of firearm violence on December 1, 2, 5, and 20 of 2020, and January 7, 2021, were all part of the same course of conduct or scheme as the illegal possession on January 14, 2021. Because the Court must review "the record as a whole," it cannot overlook the rest of the spree.

### III. The district court's ruling that the November 2020 case is unrelated cannot be squared with its undisputed findings about the December 2020 offenses.

Mr. Rahimi takes the unusual step of seeking panel rehearing because the district court's findings about the December and January crimes are critical to his argument about the November crime. If, as the Court's opinion suggests, the only offenses in the record were December 2019, November 2020, and January 2021, then it might be difficult to show clear error regarding the November 2020 offense.

The entire record confirms that the district court believed that the several violent incidents in December 2020 and January 2021 were all part of a single spree, and that Mr. Rahimi's possession of firearms on January 14 was part of that spree. No one disputes that finding. In the context of the entire record, the November 12, 2020 offense flowed quite directly into the next related offense 19 days later, which was followed by another similar crime the next day, and then another three days later, and then another fifteen days later, and then another eighteen days later, and then the federal offense seven days after that.

The district court believed it was appropriate to sentence Mr. Rahimi for *all* of his actions—including "a series of shootings lasting from November of 2020 to January of 2021." ROA.200. That "series" was marked by "continuous[ ]" possession of firearms "while prohibited." ROA.200-201.

The Supreme Court also listed the "November" aggravated assault among the conduct relevant to the decision. 144 S. Ct. at 1895. Far from supporting a distinction between the November offense and the December–January events, the Supreme Court's opinion recognizes that the November 2020 offense is part of the same spree or sequence that led to the conviction and sentence here.

## Conclusion

Mr. Rahimi asks that the panel reconsider its decision with respect to the November 2020 offense. He asks that the Court either restore the case to the calendar with additional briefing from the parties or remand the case to the district court so it can reexamine the November 2020 offense in light of its findings about the rest of the offenses in the same spree.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender for the
Northern District of Texas

/s/ J. Matthew Wright
Assistant Federal Public Defender
Assistant Federal Public Defender
Texas Bar No. 24058188
500 South Taylor Street, Suite 110
Amarillo, Texas 79101
Telephone: (806) 324-2370
Matthew_Wright@fd.org

*Attorney for Mr. Rahimi*

**Certificate of Service**

I filed this petition via the Court's ECF system on September 26, 2024. Opposing counsel, a registered filer, is deemed served.

/s/ J. Matthew Wright

**Certificate of Compliance**

1. This document complies with the type-volume limit of Fed. R. App. P. 40(b)(1) because the document contains 2,733 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Goudy Old Style font. Footnotes are in 12-point font.

/s/ J. Matthew Wright

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 12, 2024

Lyle W. Cayce
Clerk

No. 21-11001

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ZACKEY RAHIMI,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CR-83-1

ON REMAND FROM
THE SUPREME COURT OF THE UNITED STATES

Before JONES, HO, and WILSON, *Circuit Judges*.

PER CURIAM:

This case is before us on remand from the Supreme Court. The district court and a prior panel of this court rejected Zackey Rahimi's facial challenge to 18 U.S.C. § 922(g)(8) and upheld his conviction under that statute. *See United States v. Rahimi*, No. 21-11001, 2022 WL 2070392 at *1 n.1 (5th Cir. June 8, 2022) (withdrawn July 7, 2022). The prior panel then withdrew that opinion and requested additional briefing addressing *N.Y.*

No. 21-11001

*State Rifle & Pistol Association. v. Bruen*, 142 S. Ct. 2111 (2022), which the Supreme Court handed down shortly after our court's initial affirmance of Rahimi's conviction. *United States v. Rahimi*, No. 21-11001, 2022 WL 2552046, at *1 (5th Cir. Jul. 7, 2022). The case was then assigned to this panel, which, after the supplemental briefing and oral argument, re-evaluated this court's Second Amendment jurisprudence and concluded that under *Bruen*, § 922(g)(8) failed to pass constitutional muster. *United States v. Rahimi*, 61 F.4th 443, 461 (5th Cir. 2023). We therefore reversed the district court's contrary ruling and vacated Rahimi's conviction. *Id.* The Supreme Court, clarifying its *Bruen* test, reversed our judgment and held that § 922(g)(8) is facially constitutional. *United States v. Rahimi*, 602 U.S. ----, 144 S. Ct. 1889 (2024).[1]

The facts of this case are well-recounted in this court's prior opinions, *e.g.*, 61 F.4th at 448–50, so we do not recite them again here. In his appeal, Rahimi raised only two issues: his facial challenge to § 922(g)(8), and whether the district court erred in imposing his sentence to run consecutively with any state sentences imposed. Rahimi did not lodge an as-applied or due-process challenge to § 922(g)(8), or otherwise contest his conviction. Based on the Supreme Court's ruling rejecting his constitutional claim, we therefore affirm his conviction.

---

[1] We read the Court's analysis in *Rahimi* to have modified *Bruen* in at least one relevant respect. In *Bruen*, the Court instructed that surety laws provided no historical analogue for banning a person from having a gun, because surety laws only required "certain individuals to post bond before carrying weapons in public." 597 U.S. at 55. "These laws were not *bans* on public carry." *Id.*; *see also id.* at 59 (same). So any "reliance on [surety laws] [was] misplaced." *Id.* at 55. In *Rahimi*, the Court announced that surety laws "confirm" that covered individuals "may be disarmed." 602 U.S. at ----, 144 S. Ct. at 1901.

No. 21-11001

With Rahimi's constitutional challenge settled, we briefly discuss his sentencing claim. Weighing the facts underlying Rahimi's federal and state offenses against the Guidelines, the district court concluded that the conduct underlying his state offenses was not "relevant conduct" under U.S.S.G. § 1B1.3. *Cf.* U.S.S.G. § 5G1.3(c) (providing that if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction," *see* U.S.S.G. § 1B1.3(a)(1)-(3), the sentence for the instant federal offense should run concurrently to the anticipated state sentences). Based on that finding, the court ordered Rahimi's 73-month federal sentence to run consecutively to any sentences stemming from his pending state charges.[2]

This court initially addressed—and rejected—Rahimi's contention that the district court erred when it ordered his federal sentence to run consecutively with any sentences imposed as a result of pending state-court charges. Post-*Bruen*, we did not address Rahimi's sentencing issue because we vacated Rahimi's conviction. *See* 61 F.4th at 449 n.4. Given that Rahimi's conviction stands, we now also affirm his sentence.

A district court has the discretion to order its sentences of imprisonment to be served concurrently or consecutively to anticipated state terms of imprisonment. *Setser v. United States*, 566 U.S. 231, 236 (2012). The sentencing court's determination of what constitutes relevant conduct is a factual finding that is reviewed for clear error. *United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019). A determination of relevant conduct is "not clearly erroneous as long as [it is] 'plausible in light of the record as a

---

[2] At the time Rahimi filed this appeal, he faced four state charges stemming from his use of a firearm: three related to Rahimi's physical assault of his girlfriend in December 2019, and one from Rahimi's aggravated assault of a different woman in November 2020.

No. 21-11001

whole.'" *United States v. Ortiz*, 613 F.3d 550, 557 (5th Cir. 2010) (quoting *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009)).

Rahimi argues that his four state charges "stem[] from conduct dealing with firearms and domestic violence," such that "all of them are relevant conduct" to his federal offense. Thus, he maintains, his federal and state sentences should run concurrently, rather than consecutively. But the record as a whole plausibly supports the district court's finding that Rahimi's pending state charges involve alleged conduct not part of the same course of conduct as Rahimi's possession of a firearm in violation of a restraining order (and thus in violation of § 922(g)(8)). *Accord Rahimi*, 2022 WL 2070392, at *1–2.

We AFFIRM Rahimi's conviction and sentence. Appellant shall have fourteen days after entry of this opinion to file any petition for rehearing. *See* Fed. R. App. P. 40(a)(1).

No. 21-11001

James C. Ho, *Circuit Judge*, concurring:

The Supreme Court can adjust or amend its own precedents at its discretion. Inferior courts have no such luxury. The Supreme Court has repeatedly instructed us to follow its precedents, whether we agree with them or not—and whether we expect the Court itself to follow them or not. *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Exp.*, 490 U.S. 477, 484 (1989); *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *United States v. Hatter*, 532 U.S. 557, 567 (2001).

So we'd be defying the Court's express command if we decided cases based on anticipated changes to its precedents. It's up to the Court to modify or overrule its own precedents, as it alone deems appropriate—and to reverse us when it does. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, 597 U.S. 215 (2022), *rev'g* 945 F.3d 265 (5th Cir. 2019).

That's exactly what happened here. We faithfully applied the Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). *See United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023). No member of our court disagreed with our interpretation or application of *Bruen*. As one of our distinguished colleagues put it, our job is not to relitigate *Bruen*, but to "operat[e] in good faith" and "faithfully implement *Bruen*." *United States v. Daniels*, 77 F.4th 337, 357–58 (5th Cir. 2023) (Higginson, J., concurring).

The Court has now modified *Bruen*—as our decision today explains. *See United States v. Rahimi*, 602 U.S. _ (2024), *rev'g* 61 F.4th 443; *ante*, at 2 n.1. I write separately to note a second alteration to Court precedent. In the past, the Court has held unconstitutional laws that punish people who don't belong in federal prison—even if the defendant himself does. *See, e.g.*, *United States v. Lopez*, 514 U.S. 549 (1995); *see also United States v. Kersee*, 86 F.4th 1095, 1101–02 & n.2 (5th Cir. 2023) (Ho, J., concurring). That principle readily applies here—victims of domestic violence don't belong in prison.

Petition for Panel Reh'g
Appendix

No. 21-11001

\* \* \*

Violent criminals should be disarmed, detained, prosecuted, convicted, and incarcerated. *See Rahimi*, 61 F.4th at 463 (Ho, J., concurring). No doubt that's what Congress had in mind when it enacted 18 U.S.C. § 922(g)(8). But § 922(g)(8) also punishes *victims* of domestic violence. As a number of amici have explained, § 922(g)(8) punishes victims who don't present any danger to anyone, but who are nevertheless subject to a protective order. It should go without saying that domestic violence victims shouldn't be imprisoned for exercising their Second Amendment rights.

The National Association of Criminal Defense Lawyers and the Bronx Defenders Union, for example, noted that "the Government tries to assure this Court that states are foolproof in issuing orders of protection," but that "[t]his could not be further from the truth." Brief of The Bronx Defenders Union and National Association of Criminal Defense Lawyers as Amici Curiae in Support of Respondent, at 4, *United States v. Rahimi*, No. 22–915 (2024). "In our experience, the net of orders of protection is so big that it frequently entangles . . . *the actual victims in the relationships*." *Id.* (emphasis added). "The Government does not address the reality that states frequently get it wrong"—namely, by "arresting the wrong partner." *Id.* at 4–5.

The California Public Defenders Association and the Alameda County Public Defenders expressed the same concerns. They observed that "[t]here is almost no incentive to deny a petitioner a restraining order." Brief of Amici Curiae Alameda County Public Defenders and California Public Defenders Association in Support of Respondent, at 33, *United States v. Rahimi*, No. 22–915 (2024). "[T]rial judges are often personally invested in being overly cautious." *Id.* "We have observed firsthand how mutual restraining orders are prone to manipulation and weaponization of a very

No. 21-11001

important process, not to mention disarming *the victim of domestic violence*." *Id.* at 34 (emphasis added).

Other amici identified similar issues. *See*, *e.g.*, Brief of Amici Curiae Phyllis Schlafly Eagles and Eagle Forum Education & Legal Defense Fund in Support of Respondent, at 3–4, *United States v. Rahimi*, No. 22–915 (2024) ("It has long been common knowledge that restraining orders are used by lawyers for strategic advantage, rather than for genuine safety concerns.").

\* \* \*

The message of these amici is simple: § 922(g)(8) punishes victims of domestic violence. *See also Rahimi*, 61 F.4th at 465–67 (Ho, J., concurring) (quoting scholars and judges who have expressed similar concerns).

On the other hand, Zackey Rahimi is by all accounts a dangerous person who should be in prison. So should we decline to hear his claim, and wait to address the problems with § 922(g)(8) in some future case?

Well, consider what the Court did in *Lopez*. Like Rahimi, Lopez is a dangerous person. Lopez was paid to bring a gun to school "so that he . . . could deliver it after school to 'Jason,' who planned to use it in a 'gang war.'" *United States v. Lopez*, 2 F.3d 1342, 1345 (5th Cir. 1993). But the Court nevertheless decided Lopez's Commerce Clause challenge—and held the Gun-Free School Zones Act unconstitutional—because it sweeps in those who don't belong in a federal prison. *See* 514 U.S. at 562 ("§ 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.").

The same logic applies here. As counsel for Rahimi explained:

Ours is a facial challenge in the way that *Lopez* was a facial challenge, where the facts of *Lopez* were clearly within

Petition for Panel Reh'g
Appendix

No. 21-11001

> Congress's power under the Commerce Clause. This Court found the facts of that case were Person A was going to pay Lopez $40 to give that gun to Person C after school.
>
> That's within the commerce power, but the statute itself was not within Congress's power to enact. And so that statute failed as it then existed, the pre-amendment version of the Gun-Free School Zones Act, on its face.

Oral Arg. Tr. at 64, *United States v. Rahimi*, No. 22–915 (2024).

As noted, *Lopez* involved a claim under the Commerce Clause, not the Second Amendment. But the Court has repeatedly instructed that "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion)). So our court dutifully decided Rahimi's claim.

The Supreme Court has now decided *Rahimi*. The decision does not mention *Lopez*, and it does not allow Rahimi to litigate the sincere concerns expressed by various amici curiae, judges, scholars, and practitioners. It does acknowledge the "potential faults" with § 922(g)(8). 602 U.S. at _ n.2. But it concludes that any defects must be addressed in a future proceeding.[1]

I accordingly agree that we should affirm.

---

[1] In response to *Lopez*, Congress fixed § 922(q) to ensure that it targets only those who belong in federal prison. *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 101(f), 110 Stat. 3009, 3009-370 (1996) (codified as amended at 18 U.S.C. § 922(q)(2)(A)). Congress could likewise fix § 922(g)(8) to ensure that it targets only violent criminals, and not victims of domestic violence.